# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | EDCV 17-965-GW(DTBx) | Date | July 2, 2018 |
|---|---|---|---|
| Title | *Vanguard Medical Management Billing, Inc., et al. v. Christine Baker, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Katie Thibodeaux | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| M. Cris Armenta | Amie L. Medley |

**PROCEEDINGS:**    **DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS IN SECOND AMENDED COMPLAINT [97]**

Court and counsel confer. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court would DISMISS Plaintiffs' first and second claims for relief WITH PREJUDICE. As to the third claim for relief, the Court would DISMISS that claim WITHOUT PREJUDICE. As to the fifth claim for relief, the Court would DECLINE TO RULE at this time.

A status conference is set for August 16, 2018 at 8:30 a.m., with a joint status report to be filed by August 13, 2018.

| | : | 02 |
|---|---|---|
| Initials of Preparer | JG | |

*__Vanguard Medical Management Billing, Inc., et al v. Baker, et. al__* (CV 17-00965-GW-(DTBx))
Tentative Ruling on Motion to Dismiss Certain Claims in the Second Amended Complaint

## I. Background

### A. Procedural History

On May 17, 2018, Plaintiffs David Goodrich, as Chapter 11 Trustee ("Goodrich"); Vanguard Medical Management Billing, Inc. ("Vanguard"); One Stop Multi-Specialty Medical Group, Inc., a California corporation ("OSM"); One Stop Multi-Specialty Medical Group & Therapy, Inc., a California corporation ("OST"); Nor Cal Pain Management Medical Group, Inc., a California corporation ("Nor Cal"); Mesa Pharmacy, Inc. ("Mesa"), a California corporation ("Mesa"); and Eduardo Anguizola, M.D. ("Anguizola," and, together with Goodrich, Vanguard, OSM, OST, Nor Cal, and Mesa: "Plaintiffs") filed the Second Amended Complaint ("SAC"), suing Defendants Christine Baker ("Baker"), in her official capacity as Director of the California Department of Industrial Relations; Andrew Schoorl ("Schoorl"), in his official capacity as Acting Director of the California Department of Industrial Relations ("DIR"); and George Parisotto, in his official capacity as Acting Administrative Director of the California Division of Workers' Compensation ("Parisotto," and, together with Does 1 through 10, Baker, and Schoorl: "Defendants") in this putative civil rights lawsuit.  *See generally* SAC, Docket No. 96.  The SAC contains six causes of action for: (1) a facial violation of the right to counsel (Sixth and Fourteenth Amendments); (2) an as-applied violation of the right to counsel (Sixth and Fourteenth Amendments); (3) a violation of the Contract Clause; (4) a facial violation of due process (Fifth and Fourteenth Amendments); and (5) an as-applied violation of due process (Fifth and Fourteenth Amendments).  *See id.*  Plaintiffs, save for Mesa, had filed the original Complaint on May 17, 2017, which was brought as "a facial challenge to the constitutionality of California Labor Code § 4615 . . . ."  *See generally* Complaint ("Compl.") ¶ 1, Docket No. 1.

Plaintiffs had initially filed a Motion for a Preliminary Injunction ("MPI") to bar enforcement of Section 4615 on May 19, 2017.  *See* MPI, Docket No. 13.  Plaintiffs' MPI asked the Court to enjoin enforcement of Section 4615 base upon the alleged violations of five distinct constitutional grounds: (1) the Sixth Amendment Right to Counsel, (2) the Contract Clause, (3) Substantive Due Process, (4) "Procedural" Due Process, and (5) the Supremacy Clause.  *See generally* MPI.  The Court heard oral argument on the MPI on July 13, 2017, and issued a

"Tentative Ruling."  *See* Civil Minutes July 13, 2017 ("July 13, 2017 Order"), Docket No. 40.  In that Ruling/Order, the Court indicated that it was inclined to deny the Motion with respect to four of the five claims asserted, including Plaintiffs' challenges brought under: (1) the Sixth Amendment Right to Counsel, (2) the Contract Clause, (3) Substantive Due Process, and (4) the Supremacy Clause.  *See* July 13, 2017 Order at 14 (Sixth Amendment), 19 (Contract Clause), 21 (Substantive Due Process), 28 (Supremacy Clause).

The Court also indicated that it was inclined to grant Plaintiffs' MPI on "procedural due process" grounds, unless Defendants could demonstrate that "the Statute provides a charged lien holder with an opportunity to be heard to challenge Section 4615's application to his or liens." *See* July 13, 2017 Order at 26.  At oral argument Defense Counsel was unable to explain whether or not Section 4615 provides such an opportunity so the Court permitted Defendants to submit additional briefing and evidence on this issue.  The Court also permitted Plaintiffs to submit additional briefing on an alternative substantive due process challenge not argued in their initial moving papers: *i.e.* that Section 4615 interferes with Plaintiffs' fundamental right of Access to the Courts.

On October 19, 2017, the Court ultimately granted Plaintiffs' MPI in part on the procedural due process ground only.  *See* Civil Minutes October 19, 2017 ("October 19, 2017 Order"), Docket No. 64.  Then, on December 22, 2017, the Court ordered that Defendants − their agents, employees, and all others acting in active concert or participating with them − were enjoined and restrained as follows:

> 1)      The name of any medical provider or lien claimant whose liens have been identified by Defendants as subject to the stay mandated by California Labor Code Section 4615(a) shall be included on the public list posted on the Department of Industrial Relations website pursuant to Labor Code Section 4615(b). Defendants may comply with the order by maintaining the current (and updated as necessary) list of criminally charged providers, currently available at: https://www.dir.ca.gov/Fraud Prevention/List-of-Criminally-Charged-Providers.pdf, and posting an additional list of other lien claimants believed to have filed liens on behalf of changed providers and whose liens may be subject to the stay. The additional list as ordered herein shall be posted on the website within three (3) working days after the date of entry of this Order, and shall be updated as necessary concurrently with any updates to the workers' compensation Electronic Adjudication Management System (EAMS) identifying additional providers and lien claimants subject to the Section 4615 stay. The lists/website shall be accessible 24 hours a day.
>
> 2)      The processing and adjudication of any lien shall not be treated as

stayed pursuant to California Labor Code Section 4615(a) unless the lien claimant has been provided with notice via the lists posted on the Department of Industrial Relations website.

        3)      Lien claimants shall be given the opportunity to be heard within any workers' compensation case at a lien conference and/or lien trial, as appropriate under usual [Workers' Compensation Appeals Board ("WCAB")] adjudication procedures, if any dispute or question is raised or arises as to whether any lien at issue in the case falls within the provisions of Labor Code Section 4615 such that a stay of the lien is required. The purpose of such hearings, if requested by lien claimants, shall be solely to prevent the erroneous application of Section 4615 by its own terms, and not for the purpose of allowing any challenge by a lien claimant to the propriety of the underlying criminal charges giving rise to the stay, or for the purpose of disputing whether a lien arises from the alleged conduct giving rise to the criminal charges.

*See* December 22, 2017 Ruling ("December 22, 2017 Order"), Docket No. 81.

On February 21, 2018, Plaintiffs filed a First Amended Complaint ("FAC"). *See* Docket No. 82. On March 15, 2018, Defendants filed a motion to dismiss the FAC. *See* Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss Certain Claims ("MTD FAC"), Docket No. 88-1. On the same day, Plaintiffs moved for an order holding Defendants in contempt or alternatively for reconsideration of the Court's December 22, 2017 Order. *See* Plaintiffs' Motion for Contempt, or, in the Alternative, for Reconsideration of the Court's December 22, 2017 Order on Preliminary Injunction (Pls' MFC), Docket No. 86. As to the MTD FAC, on April 26, 2018, the Court dismissed Plaintiffs' first, second, third, fourth and fifth claims (except for the facial procedural due process component of the fourth claim for relief), without prejudice. *See generally* April 26, 2018 Civil Minutes ("April 26, 2018 Order"), Docket No. 95. The Court dismissed Plaintiffs' sixth and seventh claims (based in the Supremacy Clause and the Takings Clause) in the FAC with prejudice. *See id.* at 33. As to the Plaintiffs' MFC, the Court denied the motion because it did "not find clear and convincing evidence that Defendants are in contempt of the December 22, 2017 Order." *Id.* at 16.

Now before the Court is Defendants' motion to dismiss the first, second, third, and fifth claims for relief in the SAC. *See* Memorandum of Points and Authorities in Support of Motion to Dismiss Certain Claims in SAC ("MTD" or "Motion"), Docket No. 97-1. Plaintiffs filed an opposition to the MTD. *See* Plaintiffs' Opposition to the MTD ("Opp'n"), Docket No. 98. Defendants filed a reply in support of the MTD. *See* Reply in Support of the MTD ("MTD Reply"), Docket No. 99.

### B. Background on Workers' Compensation System and Medical Treatment Liens

The following is a synopsis of California Workers' Compensation laws, as delineated in Rassp & Herlick, *California Workers' Compensation Law* § 1.03 (Lexis 2017) ("*Rassp & Herlick*"):

> The California law provides for medical treatment, temporary disability indemnity, permanent disability indemnity, and death benefits . . . as a result of industrial injuries. Workers are assured of receiving these benefits because employers are required to secure the payment of benefits required by the Workers' Compensation laws. An employer may be insured for this program or be self-insured by obtaining from the Director of the California Department of Industrial Relations a certificate for self-insurance [Lab. Code, § 3700] . . . . The workers' compensation program was originally intended to be self-administered by employers or their insurers with a minimum of state government participation in the administration of the system. However, recent amendments to the code and to the rules have increased the state regulation of the workers' compensation system and have made it a very tightly controlled program.

As further stated:

> Under the California plan, employers or their insurance carriers make the initial determination of the validity of a claim. Government enters the picture by requiring certain notices, by encouraging prompt action, by auditing claims handling procedures, and by providing for the resolution of disputed claims. Litigated cases are heard and determined by the Workers' Compensation Appeals Board, which is one of California's regularly constituted courts of law . . . .

*Id.* at § 1.05.

An informative overview of California's workers' compensation system, including liens, is also set forth in *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1078-79 (9th Cir. 2015), as follows:

> Employers in California typically provide medical care and other services to employees for work-related injuries. *See generally* Cal. Lab.Code §§ 3600, et seq. An employer or its workers' compensation insurer may choose to provide medical care to workers through the employer's Medical Provider Network ("MPN"), 2 Witkin, *Summ. Cal. Law, Work. Comp*. § 262 (10th ed. 2005), its Health Care Organization ("HCO"), Cal. Lab.Code § 4600.3, or neither of these . . . .
>
> In certain cases, an employer or its insurer might decline to provide medical treatment to an injured employee on the grounds that an injury is not work-related or the treatment is not medically necessary. An injured worker may then seek medical treatment on his or her own, and, if the injury is later deemed work-related and the treatment medically necessary, the employer is liable for the

"reasonable expense" incurred in providing treatment . . . . Cal. Lab. Code §
4600(a), (f); 2 Witkin, Summ. Cal. Law, Work. Comp. § 264 . . . .

A provider of services − whether for medical treatment, ancillary services,
or medical-legal services − may not seek payment directly from the injured
worker. *Id.* § 3751(b).[¹]  Nor may a provider seek payment through the filing of
a civil action against the employer or its insurer. *Vacanti v. State Comp. Ins.
Fund*, 24 Cal.4th 800, 815, 102 Cal.Rptr.2d 562, 14 P.3d 234 (2001) ("[C]laims
seeking compensation for services rendered to an employee in connection with his
or her workers' compensation claim fall under the exclusive jurisdiction of the
[Workers' Compensation Appeals Board].").  Instead, these providers may seek
compensation by filing a lien in the injured employee's workers' compensation
case. *See generally* Rassp & Herlick, *Cal. Workers' Comp. Law* ch. 17 (Lexis
2014).  The filing of a lien entitles a provider to participate in the workers'
compensation proceeding in order to protect its interests. *Id.* § 17:111[5].  After
the underlying workers' compensation case is adjudicated, a "lien conference" is
held to discuss the liens that have not already been resolved through settlement.
*Id.* § 17:113.  Any issues not resolved at the lien conference will be set for a "lien
trial." *Id.*

Whether a provider of medical or ancillary services obtains payment on its
lien depends on the result reached in the underlying case.  These providers are
entitled to payment of their liens if the injured worker establishes that the injury
was work-related and that the medical treatment provided was "reasonably
required to cure or relieve the injured worker from the effects of his or her
injury." Cal. Lab.Code § 4600; *see also id.* § 4903.

*See also Chorn v. Workers' Compensation Appeals Bd.*, 245 Cal. App. 4th 1370, 1376-78
(2016).

### C.  California Labor Code Section 4615

Enacted in 2016 and effective on January 1, 2017, California Labor Code Section 4615

("Section 4615," or the "Statute") marks a change in law with respect to the workers'

compensation lien system.  *See* Cal. Stats. 2016, c. 868 (S.B. 1160), § 7.  AB 1422 amended

Section 4615, effective January 1, 2018.  Section 4615 now reads as follows:

(a)  Upon the filing of criminal charges against a physician,
practitioner, or provider for any crime described in subparagraph (A) of
paragraph (1) of subdivision (a) of Section 139.21, the following shall
occur:

(1)  Any lien filed by, or on behalf of, the physician,

---

[¹] Cal. Lab. Code § 3751(b) provides that: "If an employee has filed a claim form pursuant to Section 5401, a
provider of medical services shall not, with actual knowledge that a claim is pending, collect money directly from
the employee for services to cure or relieve the effects of the injury for which the claim form was filed, unless the
medical provider has received written notice that liability for the injury has been rejected by the employer and the
medical provider has provided a copy of this notice to the employee."

practitioner, or provider or any entity controlled, as defined in paragraph (3) of subdivision (a) of Section 139.21, by the physician, practitioner, or provider for medical treatment services under Section 4600 or medical-legal services under Section 4621, and any accrual of interest related to the lien, shall be automatically stayed.

(2)  Except as provided in subdivisions (b) and (c), the stay shall be in effect from the time of the filing of the charges until the disposition of the criminal proceedings.

(b)  Upon conviction, as defined in paragraph (4) of subdivision (a) of Section 139.21, of the physician, practitioner, or provider for any crime described in subparagraph (A) of paragraph (1) of subdivision (a) of Section 139.21, the automatic stay shall remain in effect for any liens not dismissed pursuant to paragraph (1) of subdivision (e) of Section 139.21 until the commencement of lien consolidation procedures under paragraph (2) of subdivision (e) of Section 139.21.

(c)  The automatic stay required by this section shall not preclude a physician, practitioner, or provider from requesting the dismissal with prejudice and forfeiture of sums claimed therein of any liens subject to the stay. Upon the receipt of that request and for good cause shown, the chief judge of the Division of Workers Compensation or his or her designee may lift the stay as to one or more of those liens and order that they be dismissed with prejudice.

(d)  The administrative director shall promptly post on the division's Internet Web site the names of any physician, practitioner, or provider of medical treatment services whose liens are stayed pursuant to this section.

(e)  Notwithstanding this section, the filing of new or additional criminal charges against a physician, practitioner, or provider who has been suspended pursuant to subparagraph (A) of paragraph (1) of subdivision (a) of Section 139.21 shall not stay liens that are subject to consolidation and adjudication pursuant to subdivisions (e) to (i), inclusive, of Section 139.21, unless a determination has been made pursuant to subdivision (i) of Section 139.21 that a lien did not arise from the conduct that subjected the physician, practitioner, or provider to suspension.

(f)  The administrative director may adopt rules for the implementation of this section.

(g)  Notwithstanding this section, the filing of new or additional criminal charges against a physician, practitioner, or provider who has

been suspended pursuant to subparagraph (A) of paragraph (1) of subdivision (a) of Section 139.21 shall not stay liens that are subject to consolidation and adjudication pursuant to subdivisions (e) to (i), inclusive, of Section 139.21, unless a determination has been made pursuant to subdivision (i) of Section 139.21 that a lien did not arise from the conduct that subjected the physician, practitioner, or provider to suspension.

Cal. Lab. Code § 4615 (effective Jan. 1, 2018).

    **D.  Factual Allegations**[2]

        *1.  Section 4615 Allegations*

The SAC makes a number of factual allegations related to Section 4615, described as background.  SAC ¶¶ 29-40.  More than 110 criminally charged providers and numerous other providers associated with those providers are unable to collect on their receivables, and Section 4615 provides no right to a hearing.  *Id.* ¶¶ 7, 10.  Plaintiffs allege that the lien freeze came in through last minute amendments to placate insurance companies, demonstrating "out-of-session influence."  *Id.* ¶¶ 34-40.  A vague reference to combating fraud was made when the Assembly voted on the bill on August 30, 2016 and it was also listed in legislative recitals.  *Id.* ¶ 39.  When the law took effect on January 1, 2017, providers, lien purchasers, and a bankruptcy trustee could not enforce contractual obligations to pay for previously approved treatments, including for treatments unrelated to alleged misconduct.  *Id.* ¶ 40.

        *2.  Plaintiff Vanguard*

Plaintiff Vanguard purchased certain receivables related to treatment rendered to workers' compensation patients.  *Id.* ¶ 12.  Vanguard purchased some of these receivables from medical providers charged with, but not convicted of, crimes related to medical fraud.  *Id.*  Vanguard has been unable to collect on those liens since Section 4615 went into effect.  *Id.*  Most of those liens represent insurers' contractual agreements to pay for medical treatment given to California workers.  *Id.*  On May 23, 2013, Vanguard purchased receivables from Proove Biosciences Incorporated, which included billings for diagnostic tests performed by medical providers.  *Id.*  ¶ 42.  Among the providers who performed the tests, two were later charged with offenses related to medical fraud.  *Id.*  As a result, the liens Vanguard purchased, including those unrelated to any alleged misconduct, have been stayed indefinitely.  *Id.*

        *3.  Plaintiff Eduardo Anguizola, M.D.*

---

[2] The SAC contains all of the factual allegations referenced in this section.

Plaintiff Anguizola lives and practices medicine in California.  *Id.* ¶ 13.  On June 14, 2014, Anguizola was indicted on one count of insurance fraud.  *Id.*  The indictment expanded to 149 felony counts, but those counts were dismissed on June 28, 2016.  *Id.*  Following that, the Orange County District Attorney filed 80 counts against Anguizola and others.  *Id.*  Though Anguizola has not pleaded guilty or has had a preliminary hearing, all lien debt owed to him has been frozen.  *Id.*  Anguizola's financial situation is dire, and he cannot afford to hire counsel of his choice to mount a defense to the charges.  *Id.*  Anguizola does not have financial assets (such as bank accounts or investment accounts) or other property sufficient to pay for the counsel of his choice if his liens remain frozen.  *Id.* ¶ 59.  The cost of his defense is estimated at a minimum of $250,000-$300,000, plus other fees and costs.  *Id.* 13.  Anguizola "must plead to what appear to be meritless charges . . . ."  *Id.*

### 4. *Plaintiff David Goodrich*

Entities who purchase these liens under contract cannot enforce their contractual rights. *Id.* ¶ 8.  At least one United States Bankruptcy Court appointed trustee, Goodrich, is impaired from collecting on receivables owed to debtor Allied Medical Management, Inc.  *Id.* ¶¶ 9-11. Goodrich is a Chapter 11 trustee in a Chapter 11 case involving a debtor alleging a contractual right to collect on workers' compensation liens arising out of professional services rendered by Anguizola's medical groups (OSM, OST, and Nor Cal) and others.  *Id.* ¶ 43.  Prior to enacting Section 4615, the Allied Estate collected approximately $100,000 per month, and now collections have dropped to below $30,000 per month.  *Id.*

### 5. *Plaintiffs OSM, OST, and Nor Cal*

Plaintiffs OSM, OST, and Nor Cal are health care providers operating as billing entities for Anguizola and others.  *Id.* ¶¶ 14-16.  They have filed workers' compensation liens related to Anguizola's and others' treatment.  *Id.*  As a result of Section 4615, all of their liens have been frozen, including those for treatment by doctors who have not been charged with wrongdoing. *Id.*  Goodrich is pursuing these liens.  *Id.*

### 6. *Plaintiff Mesa*

Plaintiff Mesa is a California Corporation.  *Id.* ¶ 17.  Mesa is a full service retail pharmacy.  *Id.*  Though Mesa has not been charged with any criminal wrongdoing subjecting it to an automatic stay under Section 4615, Mesa's liens have been stayed pursuant to an administrative flag issued by unknown individuals at the DIR.  *Id.*  WCAB has announced that it

has refused to conduct lien hearings involving flagged providers like Mesa until notification of DIR occurs.  *Id.*

### 7. *Trucare*

Trucare Pharmacy, Inc. ("Trucare") is a specialty pharmacy.  *Id.* ¶ 18.  Trucare is not a plaintiff, but is the party in interest with respect to collection on certain liens.  *Id.*  Trucare has not been charged with criminal wrongdoing that would subject it to the automatic stay provision of Section 4615, but all of Trucare's liens have been stayed pursuant to an administrative flag issued by individuals at the DIR.  *Id.*  This is not an adjudication or judicial determination that a particular lien filed by a lien claimant is subject to the stay.  *Id.*

### 8. *Defendants*

Defendants Schoorl is Acting Director of the DIR.  *Id.* ¶ 20.  His duties include coordinating and overseeing the department's divisions, boards, and commissions, and ensuring enforcement of laws related to the DIR.  *Id.*  Defendant Parisotto is Administrative Director of the California Department of Workers' Compensation.  *Id.* ¶ 21.  His duties include promulgating notices, regulations and directives within the workers' compensation system.  *Id.* Defendant Baker is sued in her former capacity as Director of the DIR.  *Id.* ¶ 19.  Her duties included those now belonging to Schoorl.  *Id.*

## II.  <u>Motion to Dismiss</u>

### A.  Legal Standard

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.").

In deciding a 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations.  *Gompper v.*

*VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court is not required to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a plaintiff facing a 12(b)(6) motion has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion should be denied. *Id.*; *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013). But if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] . . . the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citations omitted).

**B. Facial Challenge vs. "As Applied" Challenge**

Plaintiffs purport to challenge Section 4615 on its face. *See* FAC ¶ 1. The parties disagree on the proper standard for such challenges. In *City of L.A. v. Patel*, the Supreme Court described and affirmed the validity of facial challenges as follows:

> A facial challenge is an attack on a statute itself as opposed to a particular application. While such challenges are the "most difficult . . . to mount successfully," . . . the Court has never held that these claims cannot be brought under any otherwise enforceable provision of the Constitution . . . . Instead, the Court has allowed such challenges to proceed under a diverse array of constitutional provisions.

135 S. Ct. 2443, 2449 (2015) (citations and quotations omitted).

To succeed in a facial challenge to a statute "a plaintiff must establish that a 'law is unconstitutional in all of its applications.'" *Id.* at 2451 quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008). Because facial constitutional challenges "often rest on speculation," they are disfavored. *See, e.g.*, *Jackson v. City and County of San Francisco*, 746 F.3d 953, 962 (9th Cir. 2014) (citation omitted). Moreover, plaintiffs must meet a high bar to prevail on a facial challenge, as a facial challenge succeeds only "by 'establish[ing] that no set of circumstances exists under which the Act would be valid, *i.e.*, that the law is unconstitutional in all of its applications*.*" *Washington State Grange*, 552 U.S. at 449 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)) (emphasis added); *Morrison v. Peterson*, 809 F.3d 1059, 1064 (9th Cir. 2015) (citation omitted). Thus, the fact that a statute "might operate unconstitutionally *under some circumstances* is not enough to render it invalid

against a facial challenge." *Patel*, 135 S. Ct. at 2451. "When assessing whether a statute meets this standard, the Court . . . [considers] only applications of the statute in which it actually authorizes or prohibits conduct." *Id.*[3]

However, the Court "neither want[s] nor need[s] to provide relief to nonparties when a narrower remedy will fully protect litigants," and follows a "policy of avoiding unnecessary adjudication of constitutional issues[.]" *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 478 (1995) (limiting relief to the parties before the Court in light of plaintiffs' constitutional challenge to validity of statute). Thus, the Court may consider Plaintiffs' facial challenge to Section 4615 only with respect to the parties in the instant action, *i.e.*, as an as-applied challenge, under prevailing precedent. *See, e.g.*, *id.*[4]

### C. Analysis of Claims

Defendants move to dismiss in full the first, second, third, and fifth claims for relief. *See* MTD at 10. The Court will analyze these claims in turn.

#### 1. First Claim for Relief – Facial Challenge under the Right to Counsel

Anguizola alleges that Section 4615 violates his Sixth Amendment right to counsel because, as a result of his medical fraud charges, the Statute has frozen all lien debt owed to any of his medical practices, rendering him incapable of retaining counsel in his defense. SAC ¶¶ 13, 52-56. The first claim for relief is a facial, rather than as-applied, challenge. *Id.*

Defendants argue that Anguizola's facial challenge to the Statute fails again because Plaintiffs do not proffer any allegations in the SAC that would make the claim survive in light of

---

[3] The Court also cited to *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U. S. 833, 894 (1992), for the following observation: "[l]egislation is measured for consistency with the Constitution by its impact on those whose conduct it affects . . . . The proper focus of the constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant."

[4] Here, to prevail on their facial challenge to Section 4615, Plaintiffs must show that staying all liens associated with an accused, irrespective of the lien's relationship to the fraud alleged, violates the constitution. While the scope and character of liens associated with any given provider will inevitably vary in number and character, Plaintiffs' facial challenge concerns only those accused providers who actually have liens frozen by the Statute. This is because the government action actually permitted by the Statute (*i.e.* the stay of a provider's liens regardless of any connection between that lien and the crime alleged) is the focus of the inquiry. In other words, the fact the statute would have no effect on the constitutional rights of an uncharged provider, or a charged provider with no outstanding liens, will not necessarily save the statute from a facial challenge. *See Patel*, 135 S. Ct. at 2451. Similarly, just because a provider may exist whose only outstanding liens all stem from the actual criminal charges, a facial challenge is not defeated if his or her rights are not affected by the statute. *Id.* Presumably even without the statute, the state may stay or otherwise encumber liens directly at issue in the criminal proceedings through other means. If that is indeed the case, then under *Patel*, the statute's effect on those liens is irrelevant to the Court's analysis of Plaintiffs' facial challenge. *Id.*

the Court's April 26, 2018 Order.  *See* MTD at 4-5.  Furthermore, Defendants argue that the SAC has not added allegations demonstrating that the allegations pertaining to the negative economic effects of Section 4615 to Anguizola are typical of other charged providers.  *See id.* at 5.  In response, Plaintiffs primarily rely on their interpretation of *Luis v. United States*, 136 S. Ct. 1083 (2016).  *See* Opp'n at 5-6.  In making that argument, as they have done in prior rounds of briefing, Plaintiffs assert that *Luis* should be read to include the stay of liens-processing provisions at issue here.  Plaintiffs also now argue that a pre-enforcement lien, prior to being frozen, has present, liquid value to the professional who provided the underlying service.  *See id.* at 6.

 "[T]he Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire."  *Luis*, 136 S. Ct. at 1089.  This right is fundamental.  *Id.*

The Supreme Court initially explained the situation involved in *Luis* as follows:

A federal statute provides that a court may freeze before trial certain assets belonging to a criminal defendant accused of violations of federal health care or banking laws.  See 18 U.S.C. §1345.  Those assets include: (1) property "obtained as a result of" the crime, (2) property "traceable" to the crime, and (3) other "property of equivalent value."  §1345(a)(2).  In this case, the Government has obtained a court order that freezes assets belonging to the third category of property, namely, property that is untainted by the crime, and that belongs fully to the defendant.  That order, the defendant says, prevents her from paying her lawyer.  She claims that insofar as it does so, it violates her Sixth Amendment "right . . . to have the Assistance of Counsel for [her] defence."

*Id.* at 1087.  In *Luis*, the Supreme Court held that pretrial restraint of a criminal defendant's untainted assets infringes on the Sixth Amendment where those assets are needed to retain counsel.  *Id.* at 1096.  Importantly, *Luis* involved an *as-applied* challenge to a single court order that froze assets that were, as a matter of undisputed fact: (1) unrelated to any criminal activity and (2) necessary in order for the defendant to retain the counsel of her choosing.  *Id.* at 1088.  In evaluating the constitutionality of the order the Court recognized that the seizure of the assets itself "does not, deny Luis' right to be represented by a qualified attorney whom she chooses and can afford."  *Id.* at 1089.  However, the order would still violate the Sixth amendment right to counsel if it "would undermine the value of that right by taking from Luis the ability to use the funds" needed to pay her chosen attorney.  *Id.*  The Court ultimately struck down the order on Sixth Amendment grounds.  *Id.* at 1093.

12

The thrust of the Court's analysis focused on the so-called, "untainted" nature of the assets subject to the order. *Id.* 1090-91. In reversing the lower court's order, the Court held, in part, that the state's interest in the property – to ensure its punishment of choice through criminal fines – was outweighed by Luis' right to use her untainted assets to the extent she needed them to select counsel of her choosing.[5] *Id.* at 1093.

The Court distinguished the *Luis* case from *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 630 (1989) and *United States v. Monsanto*, 491 U.S. 600, 615 (1989) − in which it had rejected Sixth amendment challenges to criminal forfeiture laws − based on differences in the nature of the assets involved. *See id.* at 1089-90 ("In our view, however, the nature of the assets at issue here differs from the assets at issue in those earlier cases. And that distinction makes a difference.") The Court observed that unlike in the case before them, the Court's prior rulings had dealt only with seizure of property "tainted" with crime. *Id.* at 1090-1091; *see also Caplin & Drysdale*, 491 U.S. at 630; *Monsanto*, 491 U.S. at 615. The Court found this distinction was crucial because both *Caplin & Drysdale* and *Monsanto* placed great significance on the "tainted" nature of the assets in question. *Luis*, 136 S. Ct. at 1091-92; *Caplin & Drysdale*, 491 U.S. at 626-628. The Court noted that in those cases, it had borrowed principles from property law and found that: (1) the government gains a property interest in tainted assets at the time those assets are used for criminal purposes, and (2) the criminal defendant's ownership interest in tainted assets was itself imperfect. *Id.* at 1092; *see also Caplin & Drysdale*, 491 U.S. at 619-620.

The *Luis* Court observed that assets tainted with criminal activity are decidedly different from the assets owned, "pure and simple" by Luis. *Luis*, 136 S. Ct. at 1090. In other words, the government's interest in untainted assets was substantially less than in assets tainted by criminal activity. The takeaway from *Luis*, and its discussion of its prior precedent, is that: (1) the nature of the assets at issue, and the government's interest in those assets are crucial in determining whether a pretrial restraint on property will undermine the Sixth Amendment, (2) the government's interest − acquired through property law at the time of the crime − in tainted assets

---

[5]Justice Breyer's plurality opinion cited two other rationales. *Id.* at 1093-94. He first discussed 19th century common law and historical practice whereby an accused's chattels were not said to be possessed by the crown until after a conviction was entered. *Id.* Justice Breyer's final rationale was that to allow seizure of untainted assets in the case at bar would provide the government with a wide reaching tool to use against criminal defendants accused of a wide-range of crimes. *Id.* at 1094-95. Such a development, if it were to occur would render a greater and greater class of criminal defendants indigent and in need of publicly funded counsel. *Id.*

generally outweighs a criminal defendant's right to use those assets to obtain counsel, and (3) the government's interest in untainted assets does not outweigh a criminal defendant's right to use those funds to the extent they are required in order to pay for an attorney of his or her choosing. *Id.* at 1093.  In short, pretrial restraint of tainted assets does not violate the Sixth Amendment; but restraint on untainted assets (owned free and clear by a criminal defendant) may.  *Id.*

Plaintiffs rely heavily on *Luis*, and in prior rounds of briefing argued that because Section 4615 stays all liens associated with a charged provider, and not just those liens related to criminal activity, it restrains the same type of untainted assets at issue in *Luis*.  FAC Opp'n at 4-6.  Plaintiffs further contend that, like in *Luis*, Anguizola, and other charged providers are unable to afford counsel of their choosing as a result of the lien freeze.  *Id.*  Thus Plaintiffs argue, the Statute places a pretrial restraint on untainted assets that, under *Luis*, violates Plaintiffs' Sixth Amendment right to counsel.  *Id.*

Plaintiffs' legal theory is not without some superficial appeal.  Like the court order in *Luis*, Section 4615 freezes assets (in this case liens representing services rendered) that may be "untainted" by fraud until the conclusion of criminal proceedings.  Cal. Lab. Code § 4615.  Also like *Luis*, staying all of Anguizola's liens could, at least plausibly limit his ability to retain counsel.  Additionally, nothing in *Luis* suggests its holding should be strictly limited to liquid assets in a bank account.  *See United States v. Stein*, 541 F.3d 130, 157 (2nd Cir. 2008) ("In a nutshell, the Sixth Amendment protects against unjustified governmental interference with the right to defend oneself using whatever assets one has or might reasonably and lawfully obtain."); *see also U.S. v. One Residential Property*, 733 F.Supp. 1382, 1386 (S.D. Cal. 1990) (applying Supreme Court's criminal forfeiture jurisprudence to civil litigation).  Finally, comments from the legislative record indicating that the lien freeze provision contained in Section 4615 was added late in the legislative process at the direct request of district attorneys is troubling, as is the fact the Statute freezes the liens only for the duration of the criminal proceeding.  Cal. Lab. Code § 4615.

On the other hand, there are significant factual differences in the nature of the assets seized in *Luis*, which were owned "pure and simple" by that defendant, and the liens at issue here, despite the fact both may be "untainted" by crime.  As discussed above, understanding these differences is crucial to determine if the pretrial restraint imposed by Section 4615 violates the Sixth Amendment.

A workers' compensation lien is a statutory creation of the state of California and heavily subject to regulation. *See Angelloti*, 791 F.3d at 1081 ("The right to workers' compensation benefits is 'wholly statutory.'"); *see also id.* at 1078-79 (describing statutory basis for worker's compensation liens and procedures for enforcement); Cal. Lab. Code § 4903(b) (permitting the provision of liens for reasonable expenses for medical treatment to injured workers); Cal. Lab. Code § 4600(a), (f). The statutory origin of the liens at issue has several consequences. First, it means the state has a strong interest in the lien and in ensuring the conditions precedent to its enforcement are met. This interest predates and is unrelated to any criminal act a provider commits within the lien system but instead grows out of the state's establishment and maintenance of the workers' compensation system. The Court finds the stark difference in this regard − between the liens involved here and the assets in *Luis* − to be important.

Second, *almost by definition* a lien is not owned "pure and simple" by an accused provider. *See* Cal. Lab. Code § 3600 (listing preconditions for collection on a lien). The lien is simply a statutory means by which the state helps ensure workers can access medical care. The provider, the state, and the worker treated, therefore have an interest in the liens frozen by the Statute. *See* Cal. Code Regs. Tit.8, § 10301(dd) (listing the parties capable of initiating a lien conference to resolve pending liens, including workers, the state, and certain lien holders); Cal. Code Regs. Tit. 8, § 10770.1 (a)(1) (allowing a lien claimant, who is also a "party" to initiate a lien conference). According to Plaintiffs, the SAC at least indirectly alleges that a lien "can be bought (like Vanguard did, see SAC ¶ 12), it can be sold (like the medical providers and practices that sold their liens to Vanguard did, see SAC ¶ 12), it can be assigned (see SAC ¶ 12), just like a traditionally liquid asset." *See* Opp'n at 6. The Court concludes that Plaintiff's argument is inapposite and directly contradicts the applicable statutory framework. California Labor Code § 4903.8 ("Section 4903.8") limits who can receive payment on a lien as of January 1, 2017. *See* Cal. Lab. Code § 4903.8(a)(1) (providing that "[a]ny order or award for payment of a lien filed pursuant to subdivision (b) of Section 4903 shall be made for payment only to the person who was entitled to payment for the expenses as provided in subdivision (b) of Section 4903 at the time the expenses were incurred, who is the lien owner, and not to an assignee unless the person has ceased doing business in the capacity held at the time the expenses were incurred and has assigned all right, title, and interest in the remaining accounts receivable to the assignee."). A different section of that same statute prohibits assignment of a lien unless the lien

owner "has ceased doing business in the capacity held at the time the expenses were incurred." *See id.* § 4903.8(a)(4). The California Court of Appeal has reiterated that Section 4903.8's effect "is to prohibit WCAB from ordering or awarding lien payments to anyone other than the medical provider who incurred the expense." *See Chorn v. Workers' Comp. Appeals Bd.*, 245 Cal. App. 4th 1370 (2016), *as modified on denial of reh'g* (Apr. 20, 2016), *review denied* (July 13, 2016). As such, a medical provider's interest in a given lien is imperfect at best.

For these reasons, the Court does not agree with Plaintiff's argument that the line drawn in *Luis* between tainted and untainted assets, is determinative here. Indeed, *Luis* makes clear that the nature of the property, and the state's interest therein is crucial to the Sixth Amendment analysis. *See Luis*, 136 S. Ct. at 1090; *see also supra* 12-13 (discussing *Luis'* treatment of prior Supreme Court precedent). In short, a lien filed within the state's already complicated regulatory framework is simply not the equivalent to money held, free and clear in a personal bank account. Additionally, *Luis* concerned a court order pertaining to single criminal defendant whose assets were seized pursuant to facially constitutional criminal forfeiture statutes. Nonetheless, Plaintiffs ask this Court to strike down an entire piece of legislation because one accused medical provider potentially cannot afford an attorney. The legal coherence of Plaintiffs' Sixth Amendment claim, particularly when it is considered as a facial challenge is fragile at best, and the Court would dismiss that cause of action. Further, *Luis* involved an "as applied" challenge to a single court order freezing assets that, the record established were not connected to criminal activity, and necessary for the defendant to obtain counsel. Here, Plaintiffs bring a facial challenge, and must meet a higher burden than the defendant in *Luis*. *See supra* Section II.B (describing standard for As-Applied challenges). To that end, Plaintiffs aver insufficient allegations that the economic effects of the Statute on Anguizola are in any way typical of the providers that the Statute affects generally. *See generally* SAC. Presumably, not every affected physician's sole means of attaining counsel is through the enforcement of pending liens. The Court told Plaintiffs exactly this in the April 26, 2018 Order, yet Plaintiffs did not further address this issue in either the Opposition to this Motion or in the SAC. *See* April 26, 2018 Order; *see generally* Opposition; *see generally* SAC.

For all these reasons, each of which would be sufficient, the Court would find that the first cause of action in the SAC (a facial challenge to Section 4615 based on the Sixth Amendment right to counsel) fails to state a claim on which relief can be granted.

16

2.   *Second Claim for Relief – As-Applied Challenge under the Right to Counsel*

In the second claim for relief, Anguizola alleges an as-applied violation of his Sixth Amendment right to counsel.  SAC ¶¶ 57-63.  Defendants move to dismiss this claim, arguing that the nature of liens is an imperfect property interest falling outside of *Luis*.  MTD at 12-13.  In response, Plaintiffs again argue that *Luis* applies to the liens at issue.  MTD Opp'n at 10-13.

The Court incorporates its *Luis* analysis as to the first claim for relief into this section.  As already discussed, the Court does not consider the liens at issue herein to be the same as the "untainted" assets "that belong fully to the defendant" as in *Luis*.  The Court thus finds that Plaintiffs' second claim for relief fails.[6]

3.   *Third Claim for Relief – Contract Clause*

In Plaintiffs' third claim for relief, they allege that Section 4615 unconstitutionally impairs the obligations of contracts in violation of Plaintiff's rights.  SAC ¶¶ 64-67.  Defendants move to dismiss that claim.  MTD at 6.

The Contract Clause prohibits states from passing "[l]aw[s] impairing the Obligation of Contracts[.]"  U.S. Const., art. I, § 10, cl. 1; *see also, e.g.*, *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 886-87 (9th Cir. 2003).  In determining the constitutionality of a statutory provision under the Contract Clause, courts consider "whether the change in state law has 'operated as a *substantial impairment* of a contractual relationship.'"  *Gen. Motors Corp. v. Romien*, 503 U.S. 181, 186 (1992) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978)) (emphasis added).  That inquiry includes: (1) whether a contract exists as to the specific terms allegedly at issue; (2) whether a change in law impairs an obligation under the contract; and (3) whether the impairment is fairly characterized as substantial.  *See id.*; *see also RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004) (quoting *Allied Structural Steel Co.*, 438 U.S. at 244); *San Diego Police Officers' Ass'n v. San Diego City Employees' Retirement Sys.*, 358 F.3d 725, 736-37 (9th Cir. 2009) (citations omitted).

Generally speaking:

> [T]he first inquiry must be whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.   The severity of the

---

[6] Though the Court recognizes that Plaintiff has pleaded an additional allegation that Anguizola cannot afford to pay for counsel because of a lack of financial assets, that allegation does not cure the aforementioned *Luis* issue.  *See* SAC ¶ 59.

> impairment measures the height of the hurdle the state legislation must clear.
> Minimal alteration of contractual obligations may end the inquiry at its first stage.
> Severe impairment, on the other hand, will push the inquiry to a careful
> examination of the nature and purpose of the state legislation.

*Allied Structural Steel Co.*, 438 U.S. at 244-45.  "The severity of the impairment" increases "the level of scrutiny to which the legislation will be subjected," although "[t]otal destruction of contractual expectations is not necessary for a finding of substantial impairment," and "state regulation that restricts a party to gains it reasonably expected from the contract does not necessarily constitute a substantial impairment."  *See Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411 (1983) (citations omitted).  Moreover, in ruling on the substantiality of any discernable impairment of contractual obligations imposed by the challenged statute, the court should "consider whether the industry the complaining party has entered has been regulated in the past."  *Id.* (citing *Allied Structural Steel Co.*, 438 U.S. at 242 n.13).  If the court determines that a change in state law works to the "substantial impairment of a contractual relationship," *see Gen. Motors Corp.*, 503 U.S. at 186, the court addresses whether "the State's police power permits the impairment because it is 'reasonable and necessary to serve an important purpose,'" *California Hosp. Ass'n v. Maxwell-Jolly*, 776 F. Supp. 3d 1129, 1141 (E.D. Cal. 2011) (quoting *State of Nevada Emps. Ass'n v. Keating*, 903 F.2d 1223, 1226 (9th Cir. 1990)).

Similarly, the Contract Clause of the California Constitution provides that "law[s] impairing the obligation of contracts may not be passed."  Cal. Const. art. 1, § 9.  Courts adjudicate California Contract Clause claims under the same standard as the federal Contract Clause.  *See, e.g.*, *Campanelli v. Allstate Life Ins.*, 322 F.3d 1086, 1097 (9th Cir. 2003) ("The California Supreme Court uses the federal Contract Clause analysis for determining whether a statute violates the parallel provision of the California Constitution.") (citing *Calfarm Ins. Co. v. Deukmejian*, 771 P.2d 1247, 1262-63 (Cal. 1989) (en banc)); *Retired Emps. Ass'n of Orange County, Inc. v. County of Orange*, 610 F.3d 1099, 1102 (9th Cir. 2010); *De Zewart v. Victorville Water Dist.*, No. CV 12-03087-MWF (SPx), 2012 WL 12887750, at *2 (C.D. Cal. Nov. 26, 2012).  For the purpose of this analysis, the Court follows the previously elucidated federal standard.

Plaintiffs do not allege that Section 4615 violates the Contract Clause "in all of its applications."  *Morrison v. Peterson*, 809 F.3d 1059, 1064 (9th Cir. 2015) (citation omitted).

Instead, Plaintiffs allege that "Section 4615 unconstitutionally impairs the obligation of contracts in violation of Plaintiffs' rights . . . ." SAC ¶ 65. Plaintiffs also aver that "[e]ntities or third parties who purchased receivables for good value under valid contracts" now cannot "enforce[e] their contractual rights, violating the Contract Clause of the United States Constitution and the California Constitution."[7] *Id.* ¶ 8. Section 4615 "obliterates the vested contractual rights of both the medical providers who are legally entitled to payment *and* the purchasers of receivables, all in violation of the Contract Clause." *Id.* ¶ 33. Plaintiffs assert that on May 23, 2013 Vanguard purchased receivables from Proove Biosciences Incorporated, which now cannot be collected due to Section 4615, and that the Allied Estate (and now the Allied Trustee) cannot collect on workers' compensation liens. *Id.* ¶¶ 42-43. Plaintiffs claim that Vanguard is an assignee of certain liens originated by Trucare Pharmacy and is a purchaser of other liens originated by Trucare Pharmacy. *Id.* ¶ 12. They specify that Trucare's liens have been frozen as a result of Section 4615. *Id.* ¶ 18.

The Ninth Circuit has made clear that, to prevail on a Contract Clause, claim a plaintiff must establish: "(1) whether a contract exists as to the specific terms allegedly at issue, (2) whether the law in question impairs an obligation under that contract and (3) whether the discerned impairment can fairly be characterized as substantial." *See San Diego Police Officers' Ass'n v. San Diego City Employees' Ret. Sys.*, 568 F.3d 725, 736-37 (9th Cir. 2009). As the SAC currently stands, Plaintiffs again fail to state a claim under the Contract Clause.

Though the SAC now alleges the existence of a contractual relationship between Vanguard as the purchaser of liens and the medical providers from whom Vanguard purchased those liens (*see* SAC ¶¶ 12, 18, 33, 42-43), the SAC fails to aver facts that show that: (1) the contracts between Vanguard and the medical providers contain provisions regarding the specific workers' compensation terms allegedly at issue by the enactment of Section 4615; (2) Section 4615 impairs an obligation under those contracts; and/or (3) that any discerned impairment is substantial.

As discussed in Section II.C.1, *supra*, a workers' compensation lien is a statutory creation bearing many constraints and cannot be considered (or treated) as a simple property right. As observed by the Ninth Circuit in *Angelotti Chiropractic*:

[W]orkers' compensation liens are not property interests protected by the Takings

---

[7] However, this Court would note that Section 4615 only imposes a stay and not an absolute bar on the liens.

Clause.  First, the right to workers' compensation benefits is "wholly statutory," and such rights are not vested until they are "reduced to final judgment."  *Graczyk v. Workers' Comp. Appeals Bd.*, 184 Cal. App. 3d 997, 1006 (1986). * * * * Since an injured workers'[sic] right to benefits does not vest until final judgment, the same is true for the liens at issue here, which are derivative of the underlying workers' compensation claim.  *See Perrillo v. Picco & Presley*, 157 Cal. App. 4th 914, 929 (2007) (noting that a lien claimant's rights to medical-legal costs are "derivative" of the injured worker's rights).  Medical and ancillary lienholders have the right to recover on the lien only upon a determination that the expense was "reasonably required to cure or relieve the injured worker from the effects of his or her injury."  Cal. Lab. Code § 4600.

791 F.3d 1081-82.  Thus, for example, such liens do *not* give the medical provider (or the purchaser of such lien) any right to demand payment from or to sue the injured employee, the employer or the employer's workers' compensation insurance carrier to recover on such liens. *See Angelotti Chiropractic*, 791 F.3d 1078-79; *Vacanti v. State Comp. Ins. Fund*, 24 Cal. 4th 800, 815 (2001).  As held by the California Supreme Court, "claims seeking compensation for services rendered to an employee in connection with his or her workers' compensation claim fall under the exclusive jurisdiction of the WCAB."  *Vacanti*, 24 Cal. 4th 815.  Indeed, that Court has also held that: "we have barred all claims based on 'disputes over the delay or discontinuance of [workers' compensation] benefits.'"  *Id.*

As to the first required showing of a Contracts Clause claim (*i.e.* that "a contract exists as to the specific terms allegedly at issue"), the United States Supreme Court has held that the passage of a statute making changes in the amounts of workers' compensation benefits (which required employers to retroactively pay higher benefits) did not violate the Clause.  *See General Motors Corp.*, 503 U.S. at 187-90.  In doing so, the Court observed that:

[T]he contracting parties here in no way manifested assent to limiting disability payments in accordance with the 1981 law allowing coordination of benefits.  The employment contracts at issue were formed before the 1981 law allowing coordination of benefits came into effect.  Thus, there was no occasion for the parties to consider in bargaining the question raised here: whether an unanticipated reduction in benefits could later be restored after the "benefit period" had closed.

*Id.* at 188.  Additionally, the Court rejected the argument that controlling state law as to workers' compensation benefits are deemed to be incorporated into contracts dealing with that area.  As stated by the Court:

Contrary to petitioners' suggestion, we have not held that all state regulations are

implied terms of every contract entered into while they are effective, especially when the regulations themselves cannot be fairly interpreted to require such incorporation. For the most part, state laws are implied into private contracts regardless of the assent of the parties only when those laws affect the validity, construction, and enforcement of contracts.

*Id.* at 189.

In this case, Vanguard has not alleged that any of its lien purchasing contracts with any medical providers contain provisions which deal with the specific terms at issue with the passage of Section 4615 (*e.g.* the staying of the processing of liens of medical providers who are criminally charged with fraud or abuse related to the provision of medical treatment). Likewise, there is no factual allegation that Section 4615 affects the validity, construction, and enforcement of such contracts.[8] Thus, Vanguard has not averred the first element.

As to second factor (*i.e.* whether Section 4615 impairs an obligation under the contract), while it is clear that Section 4615 affects the processing of liens before the WCAB, Vanguard has not articulated exactly how its contracts with medical providers are impaired by the passage of Section 4615. As delineated above, Vanguard has merely purchased a lien in a "very tightly controlled program" (*see Rassp & Herlick*, § 1.03). Even before the passage of Section 4615, a medical provider (and concomitantly any purchaser of the provider's interests) could not recover on a lien until a determination was made that the expense was "reasonably required." The fact that Section 4615 stays the processing of a lien while the medical provider is prosecuted for related criminal conduct does not establish that Section 4615 is the source of any impairment, as

---

[8] As decided by the Court in *Gen. Motors Corp.*, 503 U.S. at 190:

> The 1987 statute did not change the legal enforceability of the employment contracts here. The parties still have the same ability to enforce the bargained-for terms of the employment contracts that they did before the 1987 statute was enacted. Moreover, petitioners' suggestion that we should read every workplace regulation into the private contractual arrangements of employers and employees would expand the definition of contract so far that the constitutional provision would lose its anchoring purpose, *i.e.*, "enabling individuals to order their personal and business affairs according to their particular needs and interests." *Allied Structural Steel*, 438 U.S. at 245. Instead, the Clause would protect against all changes in legislation, regardless of the effect of those changes on bargained-for agreements. The employment contract, in petitioners' view, could incorporate workplace safety regulations, employment tax obligations, and laws prohibiting workplace discrimination, even if these laws are not intended to affect private contracts and are not subject to bargaining between the employer and employees. Moreover, petitioners' construction would severely limit the ability of state legislatures to amend their regulatory legislation. Amendments could not take effect until all existing contracts expired, and parties could evade regulation by entering into long-term contracts.

opposed to the medical provider's being criminally prosecuted.[9]

As to the third factor (*i.e.* that the discerned impairment is substantial), even if Section 4615 is viewed as an impairment, purchasers of workers' compensation liens could not reasonably expect those liens to be easily collectible and/or free from further regulation or legislation. *See* Cal. Lab. Code §§ 3600, 4600 (listing preconditions for collection on a lien). Clearly, the industry Plaintiffs have entered into – the medical service field in the workers' compensation context – "has been regulated in the past," thereby subjecting Plaintiffs to a heightened burden with respect to the substantiality of any discernable impairment to existing contractual obligations. *See Energy Reserves Group, Inc.*, 459 U.S. at 411. Section 4615 provides for the automatic stay of liens filed by or on behalf of physicians or providers – who have been criminally charged with: (1) fraud or abuse of a Medicare, Medicaid or Medi-Cal program, (2) misconduct of the medical practice and/or (2) other related crimes – until the disposition of the criminal proceeding. *See* Section 4615. Considering stayed liens were already an imperfect asset – even *before* they were stayed – that one could not simply cash out at any given time, freezing these liens pending resolution of criminal charges against the provider does not constitute a substantial impairment of any contract such that Section 4615 would violate the Contract Clause. Indeed, "Plaintiffs respectfully submit that they have adequately alleged contractual *impairment* in violation of the Contract Clause." *See* Opp'n at 8. They do not, however, argue that there was *substantial impairment*, which they must plead for their Contract Clause claim to survive. *See Gen. Motors Corp.*, 503 U.S. at 186 (holding that the standard is "whether the change in state law has 'operated as a *substantial impairment* of a contractual relationship.'").

As such, the Court would dismiss Plaintiffs' third claim for relief based in the Contract Clause. The Court would give Plaintiffs one last opportunity to make allegations that Section 4615 substantially impairs existing contracts, despite the fact this area is heavily regulated, otherwise it will dismiss this claim with prejudice.[10]

### 4. *Fifth Claim for Relief – Due Process As-Applied Challenge*

---

[9] It is not uncommon for a defendant in a criminal case to request a stay of a related civil matter pending the conclusion of the criminal proceedings. *See e.g. SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248 (9th Cir. 2013).

[10] The SAC does not specify whether the Contract Clause claim for relief is pleaded as an as-applied or facial challenge. *See* SAC ¶¶ 64-67. If Plaintiffs file a third amended complaint, they should specify as much and proffer allegations satisfying *Patel* if they mount a facial challenge.

In the fifth claim for relief, Plaintiffs allege that Defendants violated Vanguard and Mesa's Fifth and Fourteenth Amendment due process rights.  SAC ¶¶ 73-77.  More specifically, they allege that Mesa's liens have been frozen, and that WCAB refuses hearings pending notification of the DIR of those hearings.  *Id.* ¶ 17.  Plaintiffs also allege that a "secret list" of lien claimants has been circulated to WCAB judges, directing them to apply the automatic stay to hundreds of uncharged individuals and entities.  *Id.* ¶ 44.  Plaintiffs further allege that there is no protocol, criteria, or procedure for placement on this list that is now published on the DIR's website.  *Id.*

Defendants move to dismiss the fifth claim for relief on two grounds.  MTD at 6-9.  The first is that Plaintiffs violated Rule 15(d) of the Federal Rules of Civil Procedure ("Rule 15(d)") by failing to seek leave before adding the cause of action.  *Id.* at 6-7.  The second is that Vanguard and Mesa have not sufficiently alleged a procedural due process claim.  *Id.* at 7-8.  Because this Court finds the first ground to be valid, it will not address the second contention at this time.

Defendants previously argued that the FAC added two parties to the mix, Mesa and Trucare, who assert a new as-applied cause of action based in procedural due process violations.  MTD FAC at 19.  They argued that a supplemental pleading must be filed to add parties, and that without leave of court, Plaintiffs cannot add a distinct cause of action based on facts occurring since the original complaint was filed.  *Id.*

The Federal Rules of Civil Procedure 15(d) states as follows:

> **(d) Supplemental Pleadings.** On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d).  Pleadings "may be 'supplemented' where the pleader desires to set forth allegations concerning matters which have taken place *since* the original pleading was filed."  *See* O'Connell & Stevenson, RUTTER GROUP PRAC. GUIDE: FEDERAL CIV. PRO. BEFORE TRIAL, CALIF. & 9TH CIR. EDITIONS § 8:1377 (The Rutter Group 2017) (text cited in *Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 874 (9th Cir. 2010)).

It is undisputed that Plaintiffs added for the first time the now labeled fifth claim for

relief in the FAC, and Plaintiffs again include that cause of action in the SAC. Though the Court might ultimately grant a motion to permit Plaintiffs to file a supplemental pleading, the Court may only do so "[o]n motion and reasonable notice . . . ." Fed. R. Civ. P. 15(d). The Court previously dismissed the fifth claim for relief, noting that it "expect[ed] a potential motion to permit Plaintiffs to file a supplemental pleading in the future. After doing so, the Court can then consider the parties' arguments as to whether a supplemental pleading is warranted in this case." *See* Apr. 26, 2018 Order at 30. As Defendants point out, Plaintiff has failed to file a motion to file a supplemental pleading under Rule 15(d). *See* Docket. The SAC continues to maintain allegations related to procedural due process that would have necessarily occurred after the filing of the Complaint. SAC ¶¶ 45-48. The Court will wait to determine whether the allegations in the SAC are sufficient to state a procedural due process claim until either: (1) the parties stipulate[11] to waiving the Rule 15(d) issue or (2) Plaintiffs file a motion for permission to file a supplemental pleading. If neither of these events have occurred within 14 days of this order, then the Court will not consider such allegations and will make a determination on whether the remaining allegations in the SAC sufficiently allege a procedural due process claim.

## IV.  Conclusion

For the aforementioned reasons, as to Defendants' motion to dismiss the SAC, the Court would **DISMISS** Plaintiffs' first and second claims for relief **WITH PREJUDICE**. As to the third claim for relief, the Court would **DISMISS** that claim **WITHOUT PREJUDICE**. As to the fifth claim for relief, the Court would **DECLINE TO RULE** at this time.

---

[11] Plaintiffs argue that "the parties directly met and conferred on this topic prior to Mesa Pharmacy being added and Defendants never objected to the issue at hand." Opp'n at 9. Plaintiffs further assert that "[a]ll parties seem to agree that from a procedural perspective, [the addition of specific allegations post-dating the filing of the original Complaint] to the pleadings is permissible." *See id.* If this is the case, a stipulation to that effect should not be difficult to obtain.

24